UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEVIN D.,

                              Plaintiff,

                                                        DECISION AND ORDER

                                                        23-CV-0195DGL

          v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                              Defendant.

_____

Plaintiff appeals from a denial of disability benefits by the acting Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On February 3, 2021, plaintiff, then aged 56, filed an application for supplemental security income benefits, alleging an inability to work since May 29, 2020. His application was initially denied. Plaintiff requested a hearing, which was held via teleconference on October 28, 2022 before Administrative Law Judge Edward Malvey (the "ALJ"). The ALJ issued a decision on November 8, 2022, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #5 at 26-35). That decision became the final decision of the Commissioner on January 26, 2023, when the Appeals Council denied review. (Dkt. #5 at 1-4). Plaintiff now appeals.

The plaintiff has moved for judgment on the pleadings reversing the decision and remanding for further proceedings (Dkt. #6), and the Commissioner has cross moved (Dkt. #7) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below,

the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical history, and determined that he has the severe impairments, not meeting a listed impairment, of chronic obstructive pulmonary disease and hypertension. (Dkt. #5 at 28).

The ALJ observed that plaintiff had the medically determinable mental impairments of major depressive disorder and generalized anxiety disorder. Applying the special technique for mental impairments, the ALJ determined that plaintiff has a mild limitation in understanding, remembering, and applying information, a mild limitation in interacting with others, no limitation in maintaining concentration, persistence, and pace, and a mild limitation in adapting or managing himself. (Dkt. #5 at 29). The ALJ accordingly concluded that plaintiff's mental impairments were not disabling, and further concluded that they were nonsevere, but indicated that the RFC assessment reflected the degree of limitation caused by plaintiff's mental impairments. (Dkt. #5 at 30).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels, but with the following nonexertional limitations: he can have no more than

occasional exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases, and poorly ventilated areas. (Dkt. #5 a 31).

When presented with this RFC as a hypothetical, vocational expert Lynn Paulson testified that an individual of plaintiff's age (56 at the time of his application) and educational level (high school) with this RFC would not be able to perform plaintiff's past relevant work as a parking enforcement officer, but could perform the representative unskilled jobs of hand packager (medium exertional level), merchandise marker (light exertional level) and inspector/hand packager (light exertional level). (Dkt. #5 at 35, 49, 61). The ALJ accordingly found plaintiff not disabled.

## I.     The ALJ's Evaluation of Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred in determining that plaintiff's mental health impairments were non-severe, and by failing to consider the impact of plaintiff's mental impairments on his RFC, regardless of severity, resulting in an RFC that included no mental limitations whatsoever.

Initially, plaintiff argues that the ALJ failed to properly consider plaintiff's residence in a supportive living program, and thus erroneously found that plaintiff's mental health impairments were nonsevere. However, the record does not establish that plaintiff was receiving supportive living services, or that he was required to demonstrate any level of impairment in order to be eligible to reside in his building. Plaintiff testified only that his apartment was owned by Transitional Services for Mental Health, a nonprofit organization, and that he was required to keep the apartment clean. Plaintiff otherwise indicated that he lived independently, attending treatment, cooking and cleaning, engaging in personal care, going for walks, volunteering at a recurring local BINGO event, and socializing with friends and family. (Dkt. #5 at 385, 389). As such, I do not

find that the ALJ erred by failing to take note of plaintiff's living arrangements in considering the severity of plaintiff's mental health impairments.

Plaintiff also argues that, regardless of the severity or nonseverity of his mental health impairments, the ALJ erred in failing to include mental limitations in the RFC. It is well settled that regardless of whether an impairment is found to be severe, the ALJ is ultimately required to "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to establish disability, and that an ALJ's failure to do so can comprise reversible error. *Melendez v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 131543 at *8 (W.D.N.Y. 2020)(citing 20 CFR §§404.2534(c), 416.923(c)).

Even assuming *arguendo* that the ALJ had erred in failing to include limitations to account for plaintiff's mild impairments in the areas of understanding, remembering, and applying information, interacting with others, and/or adapting or managing himself, it is well-settled that individuals with mild (and even moderate) limitations in these areas can nonetheless perform the requirements of unskilled work. Here, there was substantial evidence in the record demonstrating that plaintiff could engage in simple, routine tasks or unskilled work despite his mental limitations, including plaintiff's treatment records showing largely normal findings, and the opinion of consulting psychologist Dr. Susan Santarpia, who made grossly normal findings on examination, and indicated that plaintiff could use, remember and apply simple and complex directions, interact appropriately with others, sustain concentration for routine tasks, and had mild to moderate limitations only with respect to regulating emotions, controlling behavior, and maintaining well-being. (Dkt. #5 at 383-86).

Additionally, the jobs identified by the vocational expert in response to the ALJ's hypothetical were all unskilled positions, able to accommodate mild or moderate mental

limitations. *See Zabala v. Astrue*, 595 F.3d 402, 410 (RFC for unskilled work is not inconsistent with moderate mental limitations); *Raymond G. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 147444 at *9 (W.D.N.Y. 2023) (unskilled jobs accommodate moderate limitations in regulating emotions, controlling behavior, and maintaining well-being). Accordingly, the ALJ's failure to include limitations to account for plaintiff's mild mental impairments in his RFC determination would, even if erroneous, be harmless error. *Cf. Andrew R. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 40804 at *25 (W.D.N.Y. 2023)(ALJ's failure to incorporate mild or moderate mental limitations into an RFC is harmless error where the record demonstrates that the claimant can engage in simple, routine tasks or unskilled work despite their mental limitations, and the hypothetical posed to the vocational expert is limited to unskilled work, or otherwise accounts for the relevant mental limitations).

## II.     The Completeness of the Record

It is well settled that due to the non-adversarial nature of social security proceedings, an ALJ has an affirmative obligation to develop the record, even where, as here, a claimant is represented by counsel. *See Rivers v. Kijakazi*, 2023 U.S. App. LEXIS 6002 at *3 (2d Cir. 2023)(unpublished opinion). "However, [where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" *Id*. (citing *Rosa v. Callahan*, 168 F.3d 72 at 79 n.5 (2d Cir. 1999)).

Plaintiff contends that the ALJ's findings about plaintiff's nonexertional capacity were made without a complete record, because the ALJ did not obtain certain treatment records from Horizon Health Services, where nurse practitioner Ms. Cerisi indicated plaintiff had treated frequently from June 2018 through the date of her September 2022 opinion. (Dkt. #5 at 502).

I do not find that the lack of such documentation created an obvious gap in the record. First, the record already contained over 120 pages of records from Horizon Health, spanning 2018-2022, and Ms. Cerisi's opinion does expressly indicate that additional records existed. Assuming that there were additional records that Horizon Health failed to produce, plaintiff makes no argument that the allegedly missing records contain any non-cumulative information that might have impacted the ALJ's determination.

Nor do I find that the ALJ lacked a complete medical history. He had before him, and discussed in his decision, intake and treatment summaries and medication management reports from Horizon Health from 2018-2022 (Dkt. #5 at 310-73, 465-500, 413-38), the records of plaintiff's primary care physician (which included objective assessments of plaintiff's mood, manner, etc.) from 2018-2022 (Dkt. #5 at 290-306, 374-81, 442-64), the opinion of consulting psychologist Dr. Susan Santarpia, which the ALJ largely credited (Dkt. #5 at 383-86); and an opinion by plaintiff's treating nurse practitioner, Ashley Ciresi (Dkt. #5 at 502-506), which the ALJ overwhelmingly rejected, for reasons set forth in his decision, which gives detailed consideration to the supportability and consistency factors relevant to the assessment of medical opinion evidence.

In summary, the record provided a sufficient basis for the ALJ to make a well-reasoned determination of plaintiff's mental RFC throughout the period under review, and plaintiff has failed to show that there was a material gap therein.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not the product of legal error. The plaintiff's motion for judgment on the

pleadings (Dkt. #6) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #7) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 5, 2023.

7